57 CCPA

**Application of Arnon O. SNODDY, Francis L. Diehl, Norman R. Smith and Joseph E. Callen.**

**Patent Appeal No. 8180.**

United States Court of Customs and Patent Appeals.

Jan. 22, 1970.

Richard C. Witte, Thomas H. O'Flaherty, Robert B. Aylor, Cincinnati, Ohio, Watson, Cole, Grindle & Watson, William J. Daniel, Washington, D. C., attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents. Raymond E. Martin, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, GANEY, Judge, sitting by designation, and ALMOND, BALDWIN and LANE, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of claims 1–9 of application serial No. 452,855, filed May 3, 1965, entitled "Detergent Composition." No claim has been allowed.

The invention relates to synthetic detergent compositions which are particularly effective for laundering fabrics in cool water having a temperature of from about 60° to about 90° F. The claimed compositions comprise from 4% to 35% of a zwitterionic, quaternary ammonium detergent having the formula

$$R-N^{+}\!\!\begin{array}{c} CH_3 \\ | \\ - \\ | \\ CH_3 \end{array}\!\! CH_2 \overset{\overset{\textstyle X}{|}}{C}HCH_2SO_3$$

[A1069]

wherein R is an alkyl radical containing from 12 to 16 carbon atoms and X is hydrogen or a hydroxyl radical, and from 8% to 90% of an alkaline salt which is capable of "building" the detergency of the zwitterionic detergent and also capable of sequestering calcium and magnesium ions present in hard water. By way of explanation, appellants' brief shows that a "zwitterionic detergent" has both positively and negatively charged substituents, giving it an "inner salt" structure, e. g.,

$$R-\overset{\overset{\textstyle (CH_3)_2}{|}}{N}{}^{(+)}-CH_2CH_2CH_2SO_3{}^{(-)}$$

[A1072]

When the positively and negatively charged groups are quaternary ammonium and carboxylate respectively, the de-

tergent is called a "betaine," and when they are quaternary ammonium and sulfonate, it is called a "sulfobetaine" (also "sultaine").

Claim 1 is representative of the appealed claims and reads:

1. A synthetic detergent composition, for the effective laundering of fabrics in water having a temperature of from about 60° F. to about 90° F., consisting essentially of:

(A) from about 4% to about 35% of a zwitterionic quaternary ammonium compound selected from the group consisting of (1) 3-(N,N-dimethyl-N-alkyl - ammonio) - propane - 1 - sulfonates and (2) 3-(N,N-dimethyl-N-alkylammonio) - 2 - hydroxypropane-1-sulfonates, wherein said alkyl radicals are selected from the group consisting of (a) hexadecyl radicals; (b) mixtures of alkyl radicals containing 14 and 16 carbon atoms; (c) alkyl radicals derived from tallow, and (d) alkyl radicals derived from coconut oil;

(B) from about 8% to about 90% of a detergency builder selected from the group consisting of pyrophosphates, tripolyphosphates, phytates, ethylenediaminetetraacetates and nitrilo triacetates, wherein the cation of said detergency builder is selected from the group consisting of sodium and potassium, and wherein the ratio of (A) to (B) by parts ranges from about 5:1 to about 1:25; and

(C) from 0% to about 88% of an additive selected from the group consisting of water, sodium sulfate and mixtures thereof.

Claims 2–9 all depend from claim 1.

The sole issue is whether the claimed invention would have been obvious within the meaning of 35 U.S.C. § 103 in view of the following prior art patents:

| | | |
|---|---|---|
| Downing | 2,129,264 | Sept. 6, 1938 |
| Unilever (British) | 751,273 | June 27, 1956 |
| Helberger (German) | 1,018,421 | Oct. 31, 1957 |
| Goff | 2,950,255 | Aug. 23, 1960 |

Downing and Helberger each disclose classes of sulfobetaines of the same general type as those used by appellants and Helberger discloses at least one species falling within the limited class of sulfobetaines recited in appellants' claims. Downing's sulfobetaines are disclosed as being useful as "wetting, detergent, emulsifying and dispersing agents." Helberger's sulfobetaines are disclosed to have surface activity, cleansing capability, bacteriostatic effect, and good water solubility. Neither Downing nor Helberger mentions detergency builders or the use of their sulfobetaines in laundering operations or compositions.

Unilever discloses detergent compositions which include a mixture of an aliphatic N-substituted amino-carboxylic acid of the formula

$$R-\underset{\underset{R_1}{|}}{N}-R_4-COOX$$

and an aliphatic N-acyl aminoalkane sulfonate having the formula

$$R_2-CO-\underset{\underset{R_3}{|}}{N}-R_4-SO_3X,$$

[A1071]

X in these formulae representing a cation which forms a water-soluble salt and the R's variously representing hydrogen, aliphatic hydrocarbon radicals, or alkylene radicals. Unilever's compositions also contain an alkyl sulfate and a builder such as pentasodium tripolyphosphate and tetrasodium pyrophosphate. It is a stated object of Unilever's invention to produce "an 'all purpose' detergent composition" which would satisfy a range of conditions from dishwashing to standard laundering operations.

Goff discloses a hair shampoo containing "[a]ny of the usual ampholytic surface active agents or detergents," and mentions as an example "dodecyl beta-alanine," an N-substituted aminocarboxylic acid also disclosed in Unilever.

The first of two rejections is based on Unilever in view of the three remaining references. The examiner was of the opinion that the only significant difference between appellants' and Unilever's compositions is the substitution of one amphoteric (also "ampholytic") detergent for another and that such a substitution would be obvious in view of Helberger and Downing which, in the examiner's view, "teach that said 'amphoterics' are well known detergents which are employed as are soaps and soap-like products," and Goff "who teaches that both betaines and the 'amphoterics' of the primary reference may be employed in detergent formulations." Appellants' brief informs us that an "amphoteric" detergent is one which can be anionic, cationic, or zwitterionic, depending on the pH of the solution in which it is dissolved.

The second rejection, which appears to be based on Helberger or Downing in view of Unilever, was expressed by the examiner as follows:

Since it is well known and conventional to add builders to detergents, it would be clearly obvious to add build-ers to the compounds of Downing et al. or Helberger thus arriving at appellants' compositions. *Even though appellants' results are somewhat better, such is not controlling when the art clearly suggests what appellants have done.* [Emphasis added.]

The board affirmed both of the rejections essentially for the reasons given by the examiner.

Appellants have submitted a considerable amount of evidence to demonstrate that their compositions possess an *unexpectedly* high degree of cool water detergency which is not suggested by the prior art. Their specification contains a number of examples comparing the laundering effectiveness of three of their compositions, when forming part of a standardized commercial detergent composition, and with "several well known and commonly used hot water detergent compounds" used under the same conditions. It is apparent from the results that appellants' compositions are definitely substantially superior performers in cool water (80°F.).

The record also contains three affidavits comparing a number of the sulfobetaines employed in the claimed compositions with two of the aliphatic N-substituted aminocarboxylic acids of Unilever. In the tests reported in two of the affidavits the detergents being compared were in aqueous solutions containing about one part of detergent per two parts of one of the detergency builders recited in claim 1. In the tests reported in the third affidavit, no builders were added. In sum, the results of these tests lead to the conclusion that while appellants' detergents without the builder perform no better than those of Unilever, appellants' claimed compositions, which include builders, are markedly superior for cool water laundering to those of Unilever used with a detergency builder. This, appellants contend, demonstrates that the superior cool water effectiveness of their compositions is due

to the claimed combination of specific zwitterionic detergents and alkaline detergency builders and not "due to some inherent superiority of appellants' detergent compounds," and thus demonstrates that the cool water effectiveness of their compositions was truly unpredictable.

Having carefully considered the prior art and the arguments of record and the evidence of unexpected superiority of the claimed compositions, we do not find any substantial basis for concluding that the claimed subject matter as a whole would have been obvious within the meaning of § 103.

The decision of the board is therefore reversed.

Reversed.